ELIZABETH GILDER,

*vs.*

UNITY GILDER and REUBEN GILDER, administrators of JOHN GILDER, deceased, and DAVID MARVEL, administrator, *d. b. n.*, of HENRY GILDER, deceased, (which said JOHN and HENRY were executors of REUBEN GILDER, dec'd), and BATCHELDER CHANCE and ABSALOM GIBBS.

*New Castle, July T.* 1827.

A plea or answer, relying upon the equitable defence of a purchase for a valuable consideration, without notice, must set forth the consideration,—of what it consisted,—and must aver the actual, *bona fide*, payment of it, independently of the usual recital of payment in the deed. Also, the plea or answer must deny positively the fact of notice of the complainant's title or claim previous to the execution of the deed; and must deny every circumstance, charged in the bill, from which notice might be inferred. Notice must be denied, though not charged in the bill.

This defence may be taken either by plea or answer ; but a denial of notice or fraud, charged in the bill, should be by answer also, in order that the complainant may be at liberty to except to its sufficiency.

A testator by will directed that his ' just debts and burying expenses be " paid " by his executors. He devised to his two sons his whole real estate, ' to them and their heirs, in equal moieties forever ; *and also all his personal estate after paying the legacies in the will mentioned."* *Held,* upon the construction of the will, that the legacies were not charged upon the real estate devised to the sons.

BILL IN EQUITY FOR A LEGACY.—This bill was filed to recover a legacy of £100 bequeathed to the complainant by the last will and testament of her father, Reuben Gilder, dated March 17th, 1775. The testator bequeathed sundry legacies, among which was a legacy to the complainant of £100, to be paid " on her arrival to lawful age or day of " marriage." The real estate of the testator was devised to his two sons, Henry Gilder and John Gilder, whom he appointed executors. After the death of the testator, in April, 1775, the will was proved and letters testamentary thereon granted to Henry Gilder and John Gilder. Henry Gilder, one · of the executors, died intestate on the 1st of June, 1789, and administration of his estate was granted to Susannah Gilder and James Miles : afterwards, upon the death of both Susannah Gilder and James Miles, administration *de bonis non,* of the estate of Henry Gilder, deceased, was granted to David Marvel, one of the defendants. John Gilder, the other executor of the will of Reuben Gilder, deceased, died on the 1st of October, 1802, and administration of his estate was granted to the defendants, Unity Gilder and Reuben Gilder. After the death of the testator, Henry Gilder and John Gilder, the devisees of his real estate, entered into possession thereof; and afterwards John Gilder, by deed dated the 30th of May, 1776, conveyed his interest in the said real estate to Henry Gilder, who became sole seized thereof. After his death the real estate was sold, under two several orders of the Orphans' Court for New Castle County, for the payment of his debts.

One of said orders was granted by the Court in the year 1789, to Susannah Gilder and James Miles, as administrators of Henry Gilder, deceased; pursuant to which order about seventy-five acres, part of said real estate, was sold to Absalom Gibbs, one of the defendants, and the sale being returned to and confirmed by the Court, the land so sold was conveyed to Absalom Gibbs, by a deed from the administrators dated the 26th of February, 1790. The other of said orders of sale was granted by the same Court, in the month of September, 1816, to David Marvel, as administrator, *d. b. n.* of Henry Gilder, deceased; pursuant to which order the residue of the real estate was sold to the defendant, Batchelder Chance; and the sale being returned to and confirmed by the Court, the land so sold was conveyed by the administrator, *d. b. n.* to Batchelder Chance, the purchaser.

The material parts of the will of Reuben Gilder, dec'd, out of which the controversy arose, were as follows:

" *First.* I do direct that my just debts and burying " expenses be paid by my executors hereafter named.

" *Item*—I give and bequeath unto my two sons, Henry " Gilder and John Gilder, the whole of my lands, that is " the plantation and land whereon I now live, as also my " right to lands in Cecil county, in the Province of " Maryland, to them and their heirs, in equal moieties for- " ever; and also my personal estate, after paying the leg- " acies hereinafter mentioned.

" *Item*—I give and bequeath unto my daughter,Elizabeth " Gilder, the sum of £100, to be paid unto her on her ar- " rival to lawful age or day of marriage; and my will also " is, that my son, John Gilder, shall at his own expense " raise and educate my said daughter, Elizabeth."

The bill, after setting forth the general facts above stated, alleged that Henry Gilder and John Gilder, as executors of the will of Reuben Gilder, dec'd, took pos-

session of the personal estate of the testator, to an amount sufficient to pay all his debts and funeral expenses, and also the legacy of the complainant; that they wasted the personal estate, and never accounted therefor; that the legacy of the complainant was by the terms of the will charged upon the real estate devised to Henry Gilder; that said real estate consisted of a farm of about two hundred acres, situated in Kent county, which farm was of a value greater than the amount of the legacy. The bill further alleged that the complainant was born on the 1st of October, 1772, and is consequently above the age of twenty one years, and entitled to payment of the legacy. The bill prayed that the representatives of the estates of Henry Gilder and John Gilder, dec'd, who were the executors of the will of Reuben Gilder, dec'd, might come to an account of the said testator's personal estate and pay the said legacy, or that, in default of personal assets of the testator to pay the same, the said legacy should be decreed to be a charge upon the real estate devised to Henry Gilder and John Gilder, and be raised by the sale of the same, or of some part thereof.

The answers of David Marvel, adm'r., *d. b. n.,* of Henry Gilder, dec'd, and of Reuben Gilder, one of the administrators of John Gilder, dec'd, severally admitted that Henry Gilder and John Gilder were executors of Reuben Gilder, dec'd, and that as such they received the personal estate of the testator. These defendants stated that they had no knowledge of any account having been passed by the said executors, but they believed that the executors had faithfully performed their duties, and had not wasted or misapplied the assets received by them. These defendants admitted the allegations of the bill touching the death of the said Henry Gilder and John Gilder, respectively, and the administration raised upon their respective estates. Also, these defendants admitted the devise of the real estate to said Henry Gilder and John Gilder, the convey-

ance by John Gilder of his interest therein to Henry Gilder, and the alleged sales and conveyances made of parts of the same, under orders of the Orphans' Court, to the defendants, Batchelder Chance and Absalom Gibbs, respectively. These defendants further alleged, by way of defence, that they believed the legacy of the complainant had been paid many years before, though they had no voucher of the fact of payment ; that the estates of the said Henry Gilder and John Gilder had been administered, without any demand or notice on the part of the complainant of her said legacy ; that these defendants had no knowledge whatever of any claim on the part of the complainant until the filing of this bill; that twenty-seven years had elapsed between the arrival of the complainant at age,—on which event the legacy became payable, and the filing of this bill; and these defendants insisted upon the lapse of time as a bar, in equity, to the complainant's demand.

Unity Gilder, who was co-administrator with Reuben Gilder of John Gilder, dec'd, being a non-resident of this State, and not having appeared in the cause after publication made under the rule of the Court, the answer of Reuben Gilder was, by consent of counsel, taken to stand as the answer of both administrators.

The answers of the defendants, Batchelder Chance and Absalom Gibbs, severally admitted the facts set forth in the bill touching the death of Reuben Gilder, the probate of his will, the bequests therein made to the complainant, and the devise of real estate to Henry Gilder and John Gilder ; also they admitted the granting of letters testamentary upon said will to Henry Gilder and John Gilder, the conveyance by John to Henry of his interest in the real estate devised to them, the death of Henry and John respectively, and that administrations were raised upon their respective estates as in the bill was set forth. These defendants believed that the personal estate of the testator,

Reuben Gilder, was sufficient to pay his debts and the legacies bequeathed by his will. They had no knowledge of any accounts having been passed by the executors, but they believed that the executors had performed their duty, and that the legacy of the complainant had been paid. The defendants severally admitted that the real estate devised to Henry Gilder and John Gilder, and of which, under the conveyance by John of his interest therein, Henry Gilder had become sole seised, was after the death of Henry Gilder, sold by his administrators under two several orders of the Orphans' Court, for the payment of his debts, and that said real estate was purchased by these defendants severally, that is to say, that a tract of seventy-five acres, part of the real estate, was purchased by the defendant, Absalom Gibbs, for the sum of £200, 15s. at the sale made by Susanna Gilder and James Miles, administrators of Henry Gilder, dec'd; also that another tract of two hundred acres, the residue of said real estate, was purchased by the defendant, Batchelder Chance, for the sum of $400.00, at the sale made by David Marvel, adm'r., d. b. n., of Henry Gilder, dec'd; and that the lands so purchased were duly conveyed to the said defendants who still held the same. And these defendants alleged, by way of defence, that the complainant had never given to these defendants respectively any notice of her claim against the said lands, nor had she ever made any demand, other than by the bill filed in this cause, upon either of these defendants, for her said legacy. These defendants, however, did not by their answers allege that they had purchased *without any notice or knowledge whatever of the complainant's claim*, or of the legacy bequeathed to her by the will of Reuben Gilder, dec'd; nor did they distinctly aver that they had *in fact paid the consideration* mentioned in the respective deeds for the lands purchased by them. For a further defence, these defendants denied that the legacy bequeathed to the complainant was, by the

terms and effect of the will of Reuben Gilder, deceased, charged upon the real estate devised to Henry Gilder and John Gilder. They also insisted upon the lapse of time since the legacy became payable to the complainant as an equitable bar to the relief prayed by this bill.

Issues were joined, and depositions taken by both parties. The cause came before the Chancellor, at the February Term, 1828, for a hearing upon the bill, answers and exhibits, without argument.

*J. M. Clayton, Brinckle* and *H. M. Ridgely*, for the complainant.

*T. Clayton, Hall, M. W. Bates* and *E. L. Wells*, for the defendants.

RIDGELY, CHANCELLOR.—There is no ground for a decree in this cause against the representatives of Henry and John Gilder. Their estates were administered without any notice of this demand, and the administrators cannot be liable on this bill,—certainly not after such a lapse of time.

The case then remains to be considered with respect to Batchelder Chance and Absalom Gibbs, the purchasers of the lands alleged by the bill to be charged with the legacy of the complainant under the will of Reuben Gilder.

One question, arising out of the answers of Chance and Gibbs is, whether they have sufficiently set up as a ground of equitable defence that they are purchasers for a valuable consideration, without notice. They indeed allege that the complainant never gave them notice of her claim, and that she never demanded of them this legacy except by the exhibition of her bill in this Court; but this is not a sufficient plea, nor answer, of the want of notice. In *Mitf. Pl.* 215, 216, it is laid down, that in a plea of purchase for a valuable consideration without notice, the plea

43

must aver the consideration and the actual payment of it, and it must deny notice of the complainant's title or claim previous to the execution of the deed and payment of the consideration. The notice so denied must be notice of the existence of the complainant's title, and not merely notice of the existence of a person who could claim under that title. If particular instances of notice or circumstances of fraud are charged, these must be denied as specifically and particularly as they are charged in the bill. The special and particular denial of notice, or of fraud, must be by way of answer, in order that the complainant may be at liberty to except to its sufficiency.

In *Bodman vs. Vandenbendy*, 1 *Vern.* 179, which was a bill by a dowress to remove a trust term, the defendant pleaded that he was a purchaser, but he did not deny notice. He was ordered to answer. Notice must be denied, though not charged in the bill. It may be sufficient to deny it by plea or answer, but it is best to deny it by both plea and answer. 3 *P. Wms.* 244, 2 *Ves. Jr.* 458–9 : 9 *Ves. Jr.* 32. Chancellor Kent, in 1 *Johns. Ch. Rep.* 575, says, "if a party means to defend himself on the ground that he was a *bona fide* purchaser for a valuable consideration, without notice of a trust, he must deny the fact of notice and every circumstance from which it can be inferred." In *Mitf. Pl.* 216, as before observed, it is stated that the consideration should be averred, and the actual payment of it. And in *Maitland vs. Wilson*, 3 *Atk.* 814, on a bill to defeat a purchase for fraud and imposition, Lord Hardwicke said, "it should have been averred by the plea that the sum mentioned as the consideration in the deed was really and *bona fide* paid, and it ought to have been pleaded distinctly and separately from the recital in the deed."

A plea of a purchase for a valuable consideration is a plea in bar. The want of notice creates an equitable bar; but where the want of notice is not pleaded no bar is presented. And so, in an answer. In *Casson vs. Round*, *Prec.*

*in Ch.* 236, the defendant by his answer did not deny notice positively, but evasively; and the complainant could not prove sufficient notice; yet, because the defendant had not denied notice positively, a decree was made against the defendant. The defence made by the answer should be as particular in stating the want of notice and the payment of a valuable consideration as in a plea; for whether it be by plea or by answer, it should present an equitable bar or defence against the recovery.

In this case the defendants, Gibbs and Chance, allege that they purchased their several parcels of land by virtue of certain orders of the Orphans' Court. Suppose they did;—what claim have they to the protection of this Court? They have not denied notice of the legacy, nor have they alleged the payment of a valuable consideration; and, therefore, they have not made a case of conscience, to warrant the protecting interposition of this Court. It may be argued that it is to be inferred from their answers that they actually paid their respective purchase moneys. That may be so; but such a fact is not to be taken by inference. It must be positively averred, independently of the recital in the deed. 3 *Atk.* 813. Because, therefore, these two defendants, in their several answers, have not denied notice of this will, nor of the bequest of this legacy to the complainant, and have not alleged the actual payment of a valuable consideration, no sufficient defence is set up on the ground of their being purchasers for a valuable consideration, without notice; and therefore this case must depend upon the other questions raised, viz; *first,* upon the effect of the will in charging the lands devised to Henry Gilder and John Gilder; and *second,* upon the effect of lapse of time.

The most important question in the cause is whether the lands devised by the will to Henry Gilder and John Gilder, were charged with this legacy.

There are no words in the first clause of the will to

charge the legacy on the real estate. The legacy is not there mentioned. The testator says :—*First,* "I do direct "that my just debts and burying expenses be paid by my "executors hereinafter named." These words, if debts were not chargeable by law on land, would charge them in this will, if the personal estate, which is the proper fund to pay debts and legacies, were insufficient. So far, no charge is made, nor intention expressed, as to the payment of the legacies. If the testator intended to charge the legacies upon the land it may be asked, why he did not include them, in this clause, with the debts and burying expenses ? After devising his real estate to his sons, Henry and John, in fee, he adds these words,—"and also, "all my personal estate, after paying the legacies herein-"after mentioned." The charge upon the real estate, if there be any, must arise out of these words ; and I apprehend, that the testator designed by them only to dispose of the personal estate and to charge the legacies upon it. Such an intention might well suit the personal estate of the testator ; for, it is agreed by all parties that it was sufficient for the payment of the debts and legacies ; and the omission to file an inventory and appraisement shows the views of the executors, and creates a strong presumption of such sufficiency. The two clauses distinctly apply, one to the real and the other to the personal estate. The personal estate only is the antecedent to the relatives, "after "paying the legacies ;" for a provision had before been made for the debts, and by no necessity can the words "after paying the legacies," be enlarged to comprehend the real estate, unless that were expressly charged, or the intention of the testator were clear and unequivocal that it should be so. The omission to charge the legacies in the first clause shows that, at that moment or in that part of the will, the payment of the legacies had not been thought of, or that the testator postponed that matter until the personal estate should be disposed of in order that they might

be charged upon it. I have examined the original will, and it seems to me that when it.was first drawn,the words, " and also all my personal estate after paying the legacies hereinafter mentioned," were omitted ; and I conclude that it afterwards occurred to the testator to dispose of the personal estate and to charge the legacies upon it. These words appear not to have been written at the same time with the rest of the will, although they are in the handwriting, I conceive, of the same person. The design seems to be so apparent, in view of all these circumstances, that I cannot bring my mind to consider the testator as intending to charge these legacies upon the real estate, or that he has done so. I should hold myself bound by the adjudged cases, if they applied to this will ; but, under my view of it, they do not, inasmuch as the testator has expressly charged the legacies upon the personal estate and by no implication on the real estate. That had been fully devised before the payment of the legacies is mentioned.; and when he does speak of their payment he connects it with the personal estate, and makes it a personal charge on Henry and John. He does not direct his executors to pay the legacies,nor in any way attach the payment to them other than as having the personal estate given to them.

In this decision I govern myself by the will and do not contradict a single case before cited.

I have not thought it necessary to enter into any consideration of the lapse of time insisted on as a defence, being quite satisfied to decide the case upon the construction of the will.

Let the bill be dismissed.